UNITED SERVICE BUREAU, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 4523, 11550, 13410. Promulgated March 25, 1929.

*A. F. Schaetzle, Esq.*, for the petitioner.
*L. A. Luce, Esq.*, for the respondent.

OPINION.

LITTLETON: A claim for personal service classification with its special method of tax must be clearly proved and can not be loosely granted. *Simon Agency*, 6 B. T. A. 432. Since the petitioner is seeking to overturn the determination of the Commissioner, the burden is upon it clearly to establish by competent and satisfactory evidence that it comes within the class of corporations referred to. *Commercial Reference Co.*, 7 B. T. A. 384.

To entitle a corporation to be classified as a personal service corporation, the income thereof must be ascribed primarily to the activities of the principal owners or stockholders, such principal owners or stockholders must themselves be regularly engaged in the active conduct of the affairs of the corporation, and capital (whether invested or borrowed) must not be a material income-producing factor.

Failure to come within any one of the requirements of these is fatal to the claim that a corporation is a personal service corporation. It is not necessary, therefore, to consider whether the petitioner fails to meet all the requirements of the statute, if the evidence shows that any one of them has not been met.

The only stockholder who devoted all his time to the business of the company was its president, E. P. Kenyon, and under cross-examination he testified as follows:

Q. Now, in your income tax report for the year 1917 you state that these master cards are the principal asset of your business; is that a fact?

A. We regard them so; we could not do business without them; if they were to become lost, we would not know where to look for the origin of our records.

Q. Well, are they pretty costly?

A. Not necessarily costly, but the maintenance of them, the value that you place on them is the result of them being the only record that you have leading to a logical source of information.

In his testimony he compared the master card record system and the rendering of reports from information contained on such cards to the work of an abstractor in preparing his records and serving his clients.

Calkins, the assistant secretary and a nonstockholder, appears to have been responsible for the keeping of the card record system, as is indicated by the testimony of Kenyon, the president of petitioner, which was as follows:

Q. You used those cards all during this period?

A. Yes.

Q. And prepared them each year?

A. They are prepared right along; we probably have got a million of them.

Q. And that is the work that Calkins does?

A. He supervises that; it is a department that he is responsible for.

The total sum expended or invested in the card system from 1909 to 1917 was $38,637.97. Other sums were, after 1917, spent on or in connection with the master card system. The master cards, continually added to and kept current, constituted an important if not the main asset of the business.

In *St. Paul Abstract Co.*, 6 B. T. A. 1225, 1231, we stated:

It is clear that the abstract records constituting its plant were capital. While we do not know the amount invested in such assets, we do know that they were used by the petitioner in producing its income. They had been built up over a long period of years. It was necessary to keep them posted from day to day from the public records. *Appeal of Record Abstract Co.*, 2 B. T. A. 628.

The *amount* of capital used in the business is not important if what was used was a material factor in producing the income. We think that the records and books of the petitioner which it used in making its abstracts of title were a material factor in the production of the income. It was testified that the same service could not have been rendered without them; that petitioner could not have made as much money and that without these records it would have taken at least 25 per cent longer time to prepare the abstracts. Even if it be conceded that it was not necessary to use these records in carrying on the business, the fact is they were actually used with great advantage. The saving of 25 per cent of time by their use is itself a material element of advantage and was a material income-producing factor. The fact also appears that the same service could not have been rendered without them.

There is no doubt but that the card records, on which so much had been expended and which were utilized so constantly, were a material income-producing factor and these records were very important in the carrying on of petitioner's business. The evidence shows the business could not have been carried on without them.

The facts of this case are similar to those in the case of the *Commercial Reference Co.*, 7 B. T. A. 384, in which the Board stated:

* * * It is shown in the evidence that the files and "Red Book" described were used by petitioner and were necessary to enable it to render the services from which it received its income. While the investigators and reporters were subject to the instructions of the officers of the corporation who were stockholders, it can not be said that the income of the petitioner resulting from the services of such investigators and reporters was primarily due to the activities of the stockholders.

The Board is of the opinion that during the taxable years the capital invested by petitioner was a material income-producing factor and also that the income of petitioner cannot be ascribed primarily to the activities of the principal stockholders who were regularly engaged in the active conduct of its business affairs. *Matteson Co. v. Willcuts*, 12 Fed. (2d) 447; *Record Abstract Co.*, 2 B. T. A. 628; *Home Insurance Agency*, 5 B. T. A. 1020; *Patterson-Andress Co.*, 6 B. T. A. 392; *Cuyahoga Abstract Title & Trust Co.*, 7 B. T. A. 95.

The case of *Cuyahoga Abstract Title & Trust Co.*, 7 B. T. A. 95, in which the Board denied personal service, was affirmed by the Court of Appeals of the District of Columbia, in which the court stated:

\* \* \* The abstract plant which was maintained at the office of the corporation was indispensable in the operation of its business. In the making of an abstract the data relative to a title would be obtained from the corporation's records by competent employees, and the abstract when completed would be passed upon by one of the principal stockholders of the company, or under his inspection.

\* \* \* The other persons employed in producing the output of the plant greatly outnumbered the principal stockholders and were paid annually an aggregate sum three to five times as much as the principal stockholders. Moreover these employees were as indispensable to the operation of the plant as were the principal stockholders themselves. See *Metropolitan Business College* v. *Blair*, 24 Fed. (2d) 176.

We think it equally certain that the corporation was not one in which invested capital was not a material income-producing factor. The plant above described constituted a productive investment capital without which the corporation's business could not be operated. \* \* \*

In our opinion capital in the instant case was a material income-producing factor in the petitioner's business, which could not have been carried on but for the master card system and there was, therefore, no error committed in denying personal service classification to petitioner. We think also that it can not be said that the income of the petitioner may be ascribed primarily to the activities of the principal stockholder and, such being true, petitioner does not come within the scope of section 200 of the Revenue Acts of 1918 and 1921. An alternative claim for special assessment for 1919, 1920, and 1921 was waived at the hearing.

*Judgment will be entered for the respondent.*